Robert S. Green (State Bar No. 136183)
**GREEN WELLING LLP**
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone (415) 477-6700
Facsimile (415) 477-6710

*Liaison Counsel for Lead Plaintiff and the Class*

Katharine M. Ryan *(Pro Hac Vice)*
Karen E. Reilly *(Pro Hac Vice)*
Kay E. Sickles *(Pro Hac Vice)*
**SCHIFFRIN & BARROWAY, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone (610) 667-7706
Facsimile (610) 667-7056

*Lead Counsel for Lead Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CORNERSTONE PROPANE PARTNERS LP SECURITIES LITIGATION | ) Case No. C03-2522-MHP )<br>)<br>) **STIPULATION AND** ) **AGREEMENT OF SETTLEMENT** |

This Stipulation of Settlement (the "Stipulation"), dated as of September 19, 2006, is made and entered into by and among the following parties (as defined further in Section V herein) to the above-entitled action (the "Action"): (i) Lead Plaintiff (as defined below), on behalf of himself and each of the Class Members, by and through his counsel of record in the Action; and (ii) Defendants (as defined below), by and through their counsel of record in the Action (collectively, the "Parties"). The Stipulation is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined below), upon and subject to the terms and conditions herein.

## I.    THE ACTION

###    A.    The Filed Actions

Beginning on May 28, 2003, the following eight federal securities class action complaints were filed against Cornerstone Propane Partners L.P. ("Cornerstone" or the "Company"), and some

or all of the individual defendants – Keith G. Baxter ("Baxter"), Ronald J. Goedde ("Goedde"), William L. Woods ("Woods"), Charles J. Kittrell ("Kittrell"), Richard D. Nye ("Nye"), Merle D. Lewis ("Lewis"), Richard R. Hylland ("Hylland"), Daniel K. Newell ("Newell") (collectively, the "Defendants"), in the Northern District of California:

> *Erikson et al v. Cornerstone Propane Partners LP et al*, Case No. C03-2522 (MHP); *Goldstein v. Cornerstone Propane Partners LP et al*, Case No. C03-02759 (MHP); *Hannah v. Cornerstone Propane Partners LP et al*, Case No. C03-3076 (MHP); *Asher v. Cornerstone Propane Partners LP et al*, Case No. C03-3265 (MHP); *Altschuler et al v. Cornerstone Propane Partners LP et al*, Case No. C03-2566 (MHP); *Jergensen v. Cornerstone Propane Partners LP et al*, Case No. C03-3163 (MJJ); *D'Elia v. Cornerstone Propane Partners LP et al*, Case No. C03-2685 (MHP); and *Gallander v. Cornerstone Propane Partners LP et al*, Case No.C03-2367 (MHP).

By an order of the Honorable Marilyn H. Patel dated October 3, 2003, the complaints were consolidated.  By that same order, the Court appointed Gilbert H. Lamphere as lead plaintiff in this Action ("Lead Plaintiff"), and approved Lead Plaintiff's selection of Schiffrin & Barroway, LLP as Lead Counsel ("Lead Counsel") for the Class and Green & Jigarjian, LLP[1] as liaison counsel ("Liaison Counsel") for the Class.

B.    Procedural History

On October 27, 2003, Lead Plaintiff filed the Amended Class Action Complaint, followed by the filing of the Corrected Consolidated Amended Class Action Complaint ("CAC") on March 2, 2004, asserting claims for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Action of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against the Defendants, as defined below.  The Complaint alleged that during the period in question, the Defendants issued false and misleading statements concerning the Company's financials, causing the price of Cornerstone common units to be artificially inflated.

---

[1] Green & Jigarjian, LLP subsequently reformed and the law firm of Green Welling LLP provides the services of Liaison Counsel for Lead Plaintiff and the Class.

Defendants filed their motions to dismiss the Complaint on March 22, 2004.  Lead Plaintiff filed an opposition to Defendants' motions to dismiss on May 6, 2004, and Defendants filed their reply memoranda to Lead Plaintiff's opposition to the motion to dismiss on June 2 and June 3, 2004. On June 3, 2004, Cornerstone filed for Chapter 11 bankruptcy in the Southern District of New York, permanently staying the action as to Cornerstone, and the case was removed from the Court's calendar by an order of the Court dated June 24, 2004.  On November 19, 2004, pursuant to the request of Lead Plaintiff, the Court executed an order granting relief from the prior order removing the case from the Court's calendar.[2]  The Court held a hearing on the Defendants' motion to dismiss on January 24, 2005, and granted the motion to dismiss with leave for Lead Plaintiff to amend.

Lead Plaintiff filed the Second Amended Class Action Complaint ("SCAC") on April 1, 2005.  Following a telephonic conference with the Court on April 15, 2005, all of the Defendants except Woods and Kittrell filed answers to the SCAC.  Woods and Kittrell filed a motion to dismiss on May 10, 2005 and, following a full briefing, the Court granted the motion as to Woods, but denied the motion as to Kittrell.  Kittrell then filed an Answer on July 19, 2005.

Thereafter, as summarized below, Lead Plaintiff initiated merits discovery by filing Initial Disclosures on July 27, 2005.  Lead Plaintiff then served formal document requests and interrogatories on Defendants, and subpoenas on third-parties.  During the same time period, Lead Plaintiff filed a motion for class certification on September 23, 2005.  Defendants deposed Lead Plaintiff and the trustee of Lead Plaintiff's investment accounts, and then filed their brief in opposition to Lead Plaintiff's motion on October 28, 2005.  Lead Plaintiff filed a reply on November 18, 2005.  Lead Plaintiff represents that it also began the extensive review and analysis of documents

---

[2] The Bankruptcy Court affirmed Cornerstone's plan of reorganization on November 8, 2004.

being produced in response to the discovery served.  The Court heard oral argument on December 5, 2005, and issued a Memorandum and Order certifying a Class, as defined below in ¶1.14, on May 3, 2006.

As explained below, following the completion of significant discovery, including the review and analysis of documents produced by Cornerstone's auditors, and the Parties' appearances for oral argument on the motion for Class Certification, the Parties began negotiating a settlement, and in the beginning of May 2006, after formal mediation and many months of negotiations, the Parties reached a tentative agreement to resolve the Action.

## II.     PRE-TRIAL PROCEEDINGS, INVESTIGATION AND DISCOVERY

### A.     Discovery, Investigation and Research Conducted by Lead Counsel

Lead Counsel has conducted discovery and investigation during the prosecution of the Action.  This discovery and investigation has included, among other things (i) review and analysis of filings made by Cornerstone with the United States Securities and Exchange Commission ("SEC"); (ii) review and analysis of press releases, public statements, news articles, securities analysts' reports and other publications disseminated by or concerning Cornerstone; (iii) interviews with former Cornerstone employees; (iv) consultations with damage and accounting experts; (v) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (vi) review of other publicly available information about Cornerstone; and (vii) review and analysis of 370,000 pages of documents produced by fourteen different persons and entities, including Defendants and Cornerstone's auditors.

### B.     Settlement Negotiations and Mediation

Pursuant to the September 26, 2005 Supplemental Joint Case Management Statement and Order, the Parties agreed to participate in formal mediation.  The mediation occurred on January 6, 2006 with the Honorable Daniel Weinstein (Ret.).  In advance of this mediation, the Parties prepared confidential and detailed mediation statements for Judge Weinstein's review, and Lead Plaintiff also prepared an alternative mediation statement for exchange between the Parties.  In their settlement

1   statements and at the mediation, the Parties presented their respective views regarding the merits of

2   the Action as well as their views concerning available defenses, the evidence and damages analyses.

3   Following a full day of mediation, the Parties were unable to resolve the Action.  In the months

4   following the mediation, the Parties continued efforts to resolve the Action through numerous

5   telephonic negotiations, with the assistance of Judge Weinstein.  After many months of negotiations,

6   the Parties have reached an agreement in principle for the settlement of this Action.

7   **III.      LEAD PLAINTFF'S CLAIMS AND BENEFITS OF SETTLEMENT**

8           Lead Plaintiff believes that the claims asserted in the Action have merit and that the evidence

9   developed to date in the Action supports the claims asserted.  Lead Plaintiff asserts and believes he

10  would present supporting evidence at trial that Defendants issued materially false and misleading

11  statements and omissions of material information concerning Cornerstone's finances, causing the

12  price of Cornerstone common units to be artificially inflated during the Class Period (as defined

13  below) and resulting in injury to Lead Plaintiff and the Class Members (as defined below).

14          Lead Plaintiff, however, recognizes and acknowledges the expense and length of continued

15  proceedings necessary to prosecute the Action against the Defendants through trial and through

16  appeals.  Lead Counsel has also taken into account the uncertain outcome and the risk of any

17  litigation, especially in complex actions such as this Action, as well as the difficulties and delays

18  inherent in such litigation.  Lead Counsel is also mindful of the inherent problems of proof under and

19  possible defenses to the securities law violations asserted in the Action.

20          In light of the foregoing, Lead Counsel and Lead Plaintiff believe that the Settlement set

21  forth in this Stipulation confers substantial benefits upon the Class.  Based on their evaluation,

22  including the review and analysis of voluminous discovery, Lead Counsel has determined that the

23  Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class.

24  **IV.      DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

25          Defendants have denied and continue to deny each and all of the claims and contentions

26  alleged by the Lead Plaintiff in the Action.  Defendants expressly have denied and continue to deny

27  all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts

28  or omissions alleged, or that could have been alleged, in the Action.  Defendants have also denied

STIPULATION OF SETTLEMENT              - 5 -

1  and continue to deny, *inter alia*, the allegations that Lead Plaintiff or the Class have suffered

2  damage, that the price of Cornerstone common units was artificially inflated by reasons of alleged

3  misrepresentations, non-disclosures or otherwise, and that Lead Plaintiff or the Class were harmed

4  by the conduct alleged in the SCAC.

5        Nonetheless, Defendants have concluded that further conduct of the Action would be

6  protracted and expensive, and that it is desirable that the Action and any Released Claims, including

7  Unknown Claims (as defined below), be fully and finally settled in the manner and upon the terms

8  and conditions set forth in this Stipulation.  Defendants have also taken into account the uncertainty

9  and risks inherent in any litigation, especially in complex cases like this securities Action.

10  Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be

11  settled in the manner and upon the terms and conditions set forth in this Stipulation.

12  **V.    TERMS OF STIPULATION OF SETTLEMENT**

13        NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead

14  Plaintiff (individually and on behalf of each of the Class Members), and the Defendants, by and

15  through their respective counsel of record, that, subject to the approval of the Court pursuant to Rule

16  23(e) of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the

17  Parties hereto from the Settlement, the Action and the Released Claims, including Unknown Claims,

18  shall be finally and fully compromised, settled and released, and the Action shall be dismissed with

19  prejudice, upon and subject to the terms and conditions of the Stipulation, as follows:

20        1.    Definitions

21        As used in the Stipulation, the following terms have the meanings specified below:

22        1.1    "Authorized Claimant" means any Class Member who files a timely and

23  approved Proof of Claim and Release form ("Proof of Claim").

24        1.2    "Claimant" means any Class Member who files a Proof of Claim.

25        1.3    "Claims Administrator" means The Garden City Group, Inc. ("GCG").

26        1.4    "Class" means all persons and entities who purchased or otherwise acquired

27  Cornerstone common units between July 29, 1998 and February 11, 2003, inclusive, and who,

28  according to the allegations of the SCAC, were damaged thereby (the "Class").  Excluded from the

1   Class are: (i) Defendants; (ii) members of the immediate family of each of the Defendants; (iii)

2   Cornerstone and any subsidiary or affiliate of Cornerstone; (iv) the directors, officers, managing

3   directors, principals and partners of Cornerstone; (v) any entity in which any excluded person has a

4   controlling interest; and (vi) the legal representative, heirs, successors or assigns of any excluded

5   person.  Also excluded from the Class are those persons or entities (i) who both purchased or

6   acquired and sold their Cornerstone common units before July 27, 2001; or (ii) who timely and

7   validly request exclusion from the Class.

8           1.5     "Class Member" or "Member of the Class" means a Person who falls within

9   the definition of the Class as set forth in ¶1.4 of this Stipulation.

10          1.6     "Class Period" means the period from July 29, 1998 through February 11,

11  2003.

12          1.7     "Company" or "Cornerstone" means Cornerstone Propane Partners L.P.,

13  currently known as Titan Propane.

14          1.8     "Defendants" means Keith G. Baxter, Ronald J. Goedde, Charles J. Kittrell,

15  Richard D. Nye, Merle D. Lewis, Richard R. Hylland, Daniel K. Newell and William L. Woods.[3]

16          1.9     "Effective Date" means the first date by which all of the events and conditions

17  specified in ¶8.1 of the Stipulation have been met and have occurred.

18          1.10    "Escrow Agent" means The Garden City Group, Inc.

19          1.11    "Final" means: (i) if an appeal is filed, the later of: (a) the date of final

20  affirmance on an appeal from the Final Order and Judgment, the expiration of the time for a petition

21  for a writ of certiorari or mandate to review the Final Order and Judgment and, if certiorari is

22  granted, the date of final affirmance of the Final Order and Judgment following review pursuant to

23  that grant; or (b) the date of final dismissal of any appeal from the Final Order and Judgment or the

24  final dismissal of any proceeding on certiorari or mandate to review the Final Order and Judgment;

25  or (ii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal

26

27  [3] Woods was dismissed from the Action by the Court's July 5, 2005 Order.  However, for the
    purposes of this Stipulation, Woods will be referred to as a Defendant.

28

1  from or motion to amend or alter the Final Order and Judgment, *i.e.*, thirty (30) calendar days after

2  entry of the Final Order and Judgment (or, if the date for taking an appeal or seeking review shall be

3  extended beyond this time by order of the Court, by operation of law or otherwise, or if such

4  extension is requested, the date of expiration of any extension if any appeal or review is not sought);

5  or (iii) if the Court enters a Final Order and Judgment in a form other than that provided above

6  ("Alternative Judgment") and none of the Parties hereto elect to terminate the Settlement, the date

7  that such Alternative Judgment becomes final as defined in parts (i) to (ii) above and no longer

8  subject to appeal or review.  Any proceeding or order, or any appeal or petition for a writ of

9  certiorari pertaining solely to any plan of allocation, the application for attorneys' fees, costs or

10  expenses, and/or any application for an award to Lead Plaintiff for reimbursement of reasonable time

11  and expenses, does not constitute an appeal for purposes of this paragraph and shall not in any way

12  delay or preclude the Final Order and Judgment from becoming final.

13        1.12   "Final Order and Judgment" means the judgment to be rendered by the Court

14  dismissing the Action with prejudice, substantially in the form and content attached hereto as Exhibit

15  B.

16        1.13   "Lead Counsel" means Schiffrin & Barroway, LLP, located at 280 King of

17  Prussia Road, Radnor, PA 19087.

18        1.14   "Lead Plaintiff" means Gilbert H. Lamphere.

19        1.15   "Liaison Counsel" means Green Welling LLP, 595 Market Street, Suite 2750,

20  San Francisco, CA  94105.

21        1.16   "Parties" means each of the Defendants and Lead Plaintiff on behalf of

22  himself and Members of the Class.

23        1.17   "Person" means an individual, corporation (including all divisions and

24  subsidiaries), partnership, limited partnership, association, joint stock company, estate, legal

25  representative, trust, unincorporated association, government or any political subdivision or agency

26  thereof, and any business or legal entity and their spouses, heirs, predecessors, successors,

27  representatives or assigns.

28

1.18   "Plaintiffs" means Lead Plaintiff and each of the plaintiffs who filed a complaint in the Action.

1.19   "Plaintiffs' Counsel" means Lead Counsel and all other counsel representing plaintiffs in any of the filed actions listed above in §I.

1.20   "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund to be prepared by Lead Counsel which shall be described in the "Notice of Pendency and Proposed Settlement of Class Action" ("Notice") to be sent to Class Members in connection with the Settlement, whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, any taxes, penalties or interest or tax preparation fees owed by the Settlement Fund, such attorneys' fees, costs, expenses and interest as may be awarded by the Court, and reimbursement for reasonable time and expenses to the Lead Plaintiff. Any Plan of Allocation is not part of the Stipulation, and Defendants and the Released Persons (as defined below) shall have no responsibility therefor or liability with respect thereto.

1.21   "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, including both known claims and Unknown Claims, (i) that have been asserted in this Action by the Class Members or any of them against any of the Released Persons, or (ii) that could have been asserted in the Action by the Class Members or any of them against any of the Released Persons which arise out of, are based upon, or relate to the allegations, transactions, facts, matters or occurrences, representations or omissions set forth, or referred to in the Action and are based upon the purchase or acquisition of Cornerstone common units during the Class Period.

1.22   "Released Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against the Lead Plaintiff, any Class Member or their

STIPULATION OF SETTLEMENT          - 9 -

attorneys, which arise out of or relate in any way to the institution, prosecution or settlement of the Action (except for claims to enforce the Settlement).

1.23   "Released Defendants v. Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendant or any of them or the successors and assigns of any of them against any of the other Defendants which arise out of or relate in any way to the allegations, transactions, facts, matters, occurrences, representations or omissions in the Action (except for claims to enforce the Settlement) and all claims for reimbursement, indemnification, or contribution that arise out of or relate to the Released Claims.

1.24   "Released Persons" means each and all of the Defendants, Cornerstone, Northwestern Corporation, Northwestern Growth Corporation, and their respective past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants, advisors, investment advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of a Defendant's immediate family, or any trust of which any Defendant is the settlor or which is for the benefit of any Defendant's family.

1.25   "Settlement Fund" means the principal amount of Thirteen Million Five Hundred Thousand Dollars ($13,500,000) in cash (the "Principal Amount"), plus interest earned or accrued thereon.

1.26   "Unknown Claims" means any Released Claims which Lead Plaintiff or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, and any Released Defendants' Claims or Released Defendants v. Defendants' Claims that any Defendant does not know or suspect to exist in his, her or its favor, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Released Claims, Released Defendants' Claims and Released Defendants v.

Defendants' Claims, the Parties stipulate and agree, upon the Effective Date, Lead Plaintiff and Defendants expressly waive and relinquish, and the Class Members and Released Persons shall be deemed to have, and by operation of the Final Order and Judgment shall have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendants expressly waive and the Class Members and Released Persons shall be deemed to, and upon the Effective Date and by operation of the Final Order and Judgment shall, have waived any and all provisions, rights and benefits conferred by any law of the United States or of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542.  The Parties acknowledge that the foregoing waiver was bargained for and a key element of the Settlement of which this release is a part.

> 2.  The Settlement

Within ten (10) business days following the Court's entry of the Final Order and Judgment, Defendants shall cause Associated Electric & Gas Insurance Services Limited ("AEGIS") to pay the sum of Thirteen Million Five Hundred Thousand Dollars ($13,500,000) into an interest bearing escrow account designated by Lead Counsel, and for the benefit of the Class.  Lead Counsel will provide wiring instructions in writing to counsel for the Defendants within three (3) business days of the Court's entry of the Final Order and Judgment.  If the agreed upon sum is not timely transferred to the Escrow Agent, Lead Plaintiff has the option to terminate the Settlement or move for the enforcement of the terms of the Settlement.  However, Defendants shall not, under any circumstances, be responsible themselves for making the actual payment should AEGIS fail to do so, and should Defendants fail to cause AEGIS to make payment, the sole remedy available against the Defendants is the termination of the Settlement.  Prior to having the option to terminate the Settlement, Lead Plaintiff shall notify Defendants' counsel via facsimile of the failure to transfer the

agreed upon sum.  If the agreed upon sum is not transferred five (5) business days after the date of the facsimile, then Lead Plaintiff shall have the right to terminate the Settlement.  In addition, interest shall begin to accrue on the $13,500,000 as of the eleventh business day following the Court's entry of the Final Order and Judgment.

      3.      <u>Administration of the Settlement Fund</u>

      (a).      <u>The Escrow Agent</u>

      3.1      The Escrow Agent shall invest the Settlement Fund deposited pursuant to ¶2 of this Stipulation in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.

      3.2      The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by an order of the Court (consistent with the terms of the Stipulation), or with the written agreement of counsel for the Defendants, Lead Counsel, and AEGIS.

      3.3      Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

      3.4      All funds held by the Escrow Agent shall be deemed and considered to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

      3.5      Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or the Court, the reasonable costs and expenses associated with identifying Class Members and effecting Notice and Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") to the Class, and the administration of the Settlement, including without limitation, the actual costs of publication, printing and mailing the Notice and Summary Notice, reimbursements to nominee owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  Prior to the Court's approval of the

STIPULATION OF SETTLEMENT     - 12 -

1    Settlement, Lead Counsel shall not pay more than $125,000 from the Settlement Fund for notice and

2    administrative expenses. Lead Counsel may pay amounts in excess of $125,000 from the Settlement

3    Fund upon Court approval.

4             (b).    <u>Taxes</u>

5         3.6     (a)     The Parties and the Escrow Agent agree to treat the Settlement Fund

6    as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In

7    addition, the Escrow Agent and, as required, the Defendants, shall jointly and timely make the

8    "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.

9    Such elections shall be made in compliance with the procedures and requirements contained in such

10    regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and

11    deliver the necessary documentation for signature by all necessary Parties, and thereafter to cause the

12    appropriate filing to occur.

13           (b)     For the purpose of §468B of the Internal Revenue Code of 1986, as

14    amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow

15    Agent. The Escrow Agent shall timely and properly file all informational and other tax returns

16    necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns

17    described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶3.6(a)

18    hereof) shall be consistent with this ¶3.6 and in all events shall reflect that all Taxes (including any

19    estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out

20    of the Settlement Fund as provided in ¶3.6(c) hereof.

21           (c)     All (i) Taxes (including any estimated Taxes, interest or penalties)

22    arising with respect to the income earned by the Settlement Fund ("Taxes"), and (ii) expenses and

23    costs incurred in connection with the operation and implementation of this ¶3.6 (including, without

24    limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and

25    expenses relating to filing (or failing to file) the returns described in this ¶3.6) ("Tax Expenses"),

26    shall be paid out of the Settlement Fund; in no event shall the Released Persons have any

27    responsibility for or liability with respect to the Taxes or the Tax Expenses, or the filing of any tax

28    returns or other documents with the Internal Revenue Service or any other state or local taxing

STIPULATION OF SETTLEMENT      - 13 -

authority.  The Escrow Agent shall indemnify and hold each of the Released Persons harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); the Released Persons are not responsible and shall have no liability, therefor, or for any reporting requirements that may relate thereto.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶3.6.

(d)     For the purpose of this ¶3.6, references to the Settlement Fund shall include both the Principal Amount and any earnings thereon.

3.     Termination of the Settlement

3.7     In the event that the Stipulation is not approved, or is terminated, canceled or fails to become effective for any reason, the Settlement Fund (including accrued interest), less expenses and any costs actually and reasonably incurred and properly due and owing in connection with the Settlement pursuant to ¶3.5 herein, and less any Taxes or Tax Expenses paid or incurred pursuant to ¶3.6 herein shall be refunded to AEGIS.  In such event, any tax refund owing to the Settlement Fund shall also be refunded.

4.     Preliminary Approval Order and Settlement Hearing

4.1     Promptly after execution of the Stipulation, but in no event later than ten (10) calendar days after the Stipulation is signed (unless such time is extended by the written agreement of Lead Counsel and counsel for the Defendants), the Parties shall submit the Stipulation together with its Exhibits to the Court and shall jointly apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, approval for mailing the Notice, substantially

STIPULATION OF SETTLEMENT        - 14 -

in the form of Exhibit A-1 hereto and publication of Summary Notice, substantially in the form of Exhibit A-3 hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application (as defined below in ¶7.1), the general terms of any application for the Lead Plaintiff to be reimbursed for reasonable time and expenses (as defined in ¶7.3) and the date of the Settlement Hearing (as defined below in ¶4.2). Cornerstone shall provide within three (3) calendar days of the Court's execution of the Preliminary Approval Order the information from its transfer records required by the Claims Administrator to send Notice to the Class Members who can be identified through those same records.

4.2     The Parties shall request that, after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Action as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

5.     Releases

5.1     Upon the Effective Date, Lead Plaintiff and each of the Class Members shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers a Proof of Claim and the Action shall be dismissed with prejudice as to the Defendants.

5.2     The Proof of Claim to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 hereto.

5.3     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Defendants' Claims against the Lead Plaintiff, and each and all of the Class Members and Lead Counsel.

5.4     Upon the Effective Date, each of the Defendants shall be deemed to have and by operation of the Final Order and Judgment shall have, fully, finally and forever released,

STIPULATION OF SETTLEMENT          - 15 -

relinquished and discharged all Released Defendants' v. Defendants' Claims against all other Defendants.

6.       Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Fund

6.1       The Claims Administrator shall administer and calculate the claims submitted by Class Members and shall oversee distribution of that portion of the Settlement Fund that is finally awarded by the Court to Authorized Claimants.

6.2       The Settlement Fund shall be applied as follows:

(a).       to pay all unpaid costs and expenses reasonably and actually incurred in connection with providing notice to the Class Members, including locating Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Settlement Fund to the Class, processing Proofs of Claim and paying escrow fees and costs, if any;

(b).       to pay Taxes and Tax Expenses;

(c).       to pay Lead Counsel's attorneys' fees, expenses and costs, with interest thereon (the "Fee and Expense Award"), if and to the extent allowed by the Court;

(d).       to pay any award by the Court to the Lead Plaintiff for reimbursement for reasonable time and expenses; and

(e).       to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation or the Court.

6.3       Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a).       Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be

required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to the Authorized Claimant.

(b).    Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments of money pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the Settlement and Releases contained herein, and the Final Order and Judgment.

(c).    The Net Settlement Fund shall be distributed to the Authorized Claimants whose recognized claim calculates to $10.00 or greater, substantially in accordance with, and subject to, the Plan of Allocation to be described in the Notice, approved by the Court and mailed to Class Members.  If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion.  Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to the San Francisco office of Habitat for Humanity.

6.4    The Released Persons and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to:  (i) the investment or distribution of the Settlement Fund; (ii) the Plan of Allocation; (iii) the determination, administration or calculation of claims; (iv) the payment or withholding of Taxes or Tax Expenses; or (v) any losses incurred in connection therewith.  No Person shall have any claim of any kind against the Released Persons or their counsel with respect to the matters set forth in this Section 6 or any of its subparts.

6.5     No Person shall have any claim of any kind against Lead Plaintiff, Lead Counsel, the Claims Administrator or any other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation or further order(s) of the Court.

6.6     It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, without limitation, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Final Order and Judgment approving the Stipulation and the Settlement set forth herein, including, but not limited to, the release, discharge, and relinquishment of the Released Claims against the Released Persons, or any other orders entered pursuant to the Stipulation.

7.      Lead Counsel's Attorneys' Fees and Reimbursement of Expenses

7.1     Lead Counsel will submit an application for an order (the "Fee and Expense Application") for distributions to it from the Settlement Fund for: (i) an award of attorneys' fees; plus (ii) reimbursement of expenses and costs, including the fees of any experts or consultants, incurred in connection with prosecuting the Action, plus (iii) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid), as may be awarded by the Court.  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

7.2     The attorneys' fees and expenses, including the fees of experts and consultants, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, immediately following both the deposit of the Principle Amount into the Settlement Fund and the Court's approval of the Fee and Expense Award.  In the event that the Effective Date does not occur, or the Final Order and Judgment or the order making the Fee and Expense Award is reversed or

modified, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel shall within ten (10) business days from any such reversal or modification, refund to the Settlement Fund the fees and expenses previously paid to them from the Settlement Fund, plus interest thereon at the same rate as earned on the cash portion of the Settlement Fund in an amount consistent with such reversal or modification, with each Plaintiff's Counsel who has received said fees and expenses being jointly and severally liable for the full refund of said fees and expenses, with interest.  As a condition of receiving such fees and expenses, Lead Counsel, on behalf of itself (and each of its partners and/or shareholders) and each Plaintiff's Counsel receiving any portion of the fees and expenses, agrees that each law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

7.3    Lead Counsel shall apply to the Court for an award to compensate the Lead Plaintiff for time and expenses dedicated to the litigation of the Action to be paid from the Settlement Fund.  Any such award shall be paid to the Lead Plaintiff according to the terms set forth above in ¶ 7.2.  The Defendants shall take no position as to this application.  In the event that the Effective Date does not occur, or the Final Order and Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and in the event that any award has been paid to any extent to the Lead Plaintiff, then Lead Plaintiff shall refund such award according to the terms set forth above in ¶ 7.2.

7.4    The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Counsel from the Settlement Fund that may occur before the Effective Date.

7.5    The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation of the Fee and Expense Award to Lead Counsel, or any other Person who may assert some claim thereto, or any Fee and Expense Award that the Court may make in this Action.

STIPULATION OF SETTLEMENT             - 19 -

7.6     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, including the fees of experts and consultants, or any application by the Lead Plaintiff for reimbursement of reasonable time and expense, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation.  Any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Final Order and Judgment approving the Stipulation and the Settlement of the Action set forth therein.

7.7     The Released Parties shall have no responsibility for or liability with respect to payment of attorneys' fees and expenses to Lead Counsel over and above payment from the Settlement Fund.

8.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

8.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     Defendants or their insurers have timely made their contributions to the Settlement Fund as required by ¶2 herein;

(b)     the Court has entered the Preliminary Approval Order, as required by ¶4.1, above;

(c)     the Court has entered the Final Order and Judgment, or a judgment substantially in the form of Exhibit B hereto;

(d)     the Final Order and Judgment has become Final, as defined in ¶1.11, above; and

(e)     Counsel for the Defendants has not given notice of intent to exercise their option to terminate the Stipulation and Settlement in accordance with the terms of the Supplemental Agreement described in ¶8.8.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 above, any and

STIPULATION OF SETTLEMENT          - 20 -

all remaining interest or right of Defendants and their insurers to the Settlement Fund, if any, shall be absolutely and forever extinguished.

8.3     Neither a modification nor a reversal on appeal of any Plan of Allocation, of any Fee and Expense Award to Lead Counsel, or any reimbursement of reasonable time and expenses to Lead Plaintiff, shall constitute a condition to the Effective Date or grounds for cancellation and termination of the Stipulation.

8.4     If any of the conditions specified in ¶8.1 above are not met, then counsel for Defendants or Lead Counsel shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so to all Parties hereto within thirty (30) calendar days of: (i) the Court's declining to enter the Preliminary Approval Order in any material respect; (ii) the Court's refusal to approve this Stipulation or any material part of it; (iii) the Court's declining to enter the Final Order and Judgment in any material respect; (iv) the date upon which the Final Order and Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; (v) the date upon which the Alternative Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (vi) in conformity with ¶ 2 if the principal amount is not paid.

8.5     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, not less than three (3) but no more than five (5) business days after written notification of such event is sent by Lead Counsel or counsel for the Defendants, with verification from Lead Counsel, to the Escrow Agent (with a faxed copy to the other parties' counsel), the Settlement Fund (including accrued interest), less expenses and any costs which have been incurred for notice and administration of the proposed Settlement, and less any Taxes and Tax Expenses paid or incurred pursuant to ¶3.6 herein, shall be refunded by the Escrow Agent to Defendants' insurance carrier, AEGIS. In such event, any tax refund owing to the Settlement Fund shall also be refunded and paid to Defendants' insurance carrier, AEGIS.

8.6     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Parties shall be restored to their respective positions in the Action as of May 18, 2006. In such

1   event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.26, 3.7, 6.4-6.6, 7.2-

2   7.4 and 8.1-8.10, 9.3, 9.8-9.12, and 9.16-9.17 herein, shall have no further force and effect with

3   respect to the Parties and shall not be used in this Action or in any other proceeding for any purpose,

4   and any Final Order and Judgment entered by the Court in accordance with the terms of the

5   Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or

6   reversal on appeal of any order of the Court concerning the Plan of Allocation, the amount of any

7   Attorney Fee and Expense Award, or reimbursement of reasonable time and expenses to Lead

8   Plaintiff shall constitute grounds for cancellation or termination of the Stipulation.

9           8.7     If a case is commenced in respect to any Defendant or AEGIS (or any insurer

10  contributing funds to the Settlement Fund on behalf of any Defendant) under Title 11 of the United

11  States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law,

12  and in the event of the entry of a final order of a court of competent jurisdiction determining the

13  transfer of the Settlement Fund, or any portion thereof, by or on behalf of such Defendant to be a

14  preference, voidable transfer, fraudulent conveyance or similar transaction and any portion thereof is

15  required to be returned, and such amount is not properly deposited to the Settlement Fund by other

16  Defendants, then, at the election of Lead Counsel, the Parties shall jointly move the Court to vacate

17  and set aside the releases given and Final Order and Judgment entered in favor of the Defendants

18  pursuant to this Stipulation, which releases and Final Order and Judgment shall be null and void, and

19  the Parties shall be restored to their respective positions in the Action as of the date a day prior to the

20  date of this Stipulation, and any cash amounts, including all attorneys' fees awarded and paid to

21  Lead Counsel and any Plaintiffs' Counsel and any award to Lead Plaintiff shall be returned as

22  provided in ¶8.5 above.  In addition, in such event, Escrow Agent shall contact each Claimant that

23  received funds and demand a refund of such funds.  Any Claimant failing to return the funds shall be

24  bound by the terms of this Stipulation and the Settlement, the bankruptcy notwithstanding.

25          8.8     If prior to the Settlement Hearing, Persons who otherwise would be Members

26  of the Class have filed with the Court valid and timely requests for exclusion ("Requests for

27  Exclusion") from the Class in accordance with the provisions of the Preliminary Approval Order and

28  the Notice given pursuant thereto, and such Persons in the aggregate purchased or acquired a number

STIPULATION OF SETTLEMENT              - 22 -

of Cornerstone common units during the Class Period in an amount greater than the sum specified in a separate Supplemental Agreement between the Parties (the "Supplemental Agreement"), Defendants shall have the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement will not be filed with the Court unless and until a dispute among the Parties concerning its interpretation or application arises.

8.9     In the event this Stipulation shall be cancelled as set forth in ¶8.8 above, the Parties shall, within two weeks of such cancellation, jointly request a status conference with the Court to be held on the Court's first available date.  At such status conference, the Parties shall ask the Court's assistance in scheduling continued proceedings in this Action.  Pending such status conference or the expiration of sixty (60) calendar days from the Parties' joint request for a status conference, whichever occurs first, none of the Parties shall file or serve any further motions on any of the other Parties in connection with this Action nor shall any response be due by any Party to any outstanding pleading or motion by any other Party.

8.10     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Settlement Fund other than that received by them as attorneys' fees and reimbursement of expenses.  In addition, any expenses already incurred and properly chargeable to the Settlement Fund pursuant to ¶3.5 herein at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶8.5 above.

9.     Miscellaneous Provisions

9.1     The Parties (i) acknowledge that it is their intent to consummate this Settlement and Stipulation; and (ii) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     Each Defendant warrants as to himself, at the time any of the payments provided for herein are made on behalf of himself, he is not insolvent and the payment will not

STIPULATION OF SETTLEMENT          - 23 -

1  render him insolvent.  The representation is made by each Defendant as to himself and is not made

2  by counsel for the Defendants.

3         9.3    The Parties agree that the amount of the Settlement Fund, as well as the

4  other terms of the Settlement, were negotiated in good faith by the Parties and reflect a settlement

5  that was reached voluntarily after consultation with experienced legal counsel.  Neither the

6  Stipulation nor the Settlement contained therein, nor any act performed or document executed

7  pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or

8  may be used as an admission of, or evidence of, the validity of any Released Claim, or of any

9  wrongdoing or liability of the Released Persons; or (ii) is or may be deemed to be or may be used as

10  an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil,

11  criminal or administrative proceeding in any court, administrative agency or other tribunal.  Released

12  Persons may file the Stipulation and/or the Final Order and Judgment of this Action in any other

13  action that may be brought against them in order to support a defense or counterclaim based on

14  principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or

15  reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16         9.4    The Parties intend this Settlement to be a final and complete resolution of all

17  disputes asserted or which could be asserted by the Class Members against the Released Persons

18  with respect to the Released Claims.  Accordingly, the Parties agree not to assert in the Action or in

19  any other judicial forum that the Action was brought or defended in bad faith or without a reasonable

20  basis.  Defendants agree not to assert any claims under Rule 11 of the Federal Rules of Civil

21  Procedure or any similar law, rule or regulation that the Action was brought in bad faith or without a

22  reasonable basis.  Lead Plaintiff and the Class agree not to assert any claims under Rule 11 of the

23  Federal Rules of Civil Procedure or any similar law, rule or regulation that any pleading filed,

24  motion made or position taken by Defendants, or their counsel, in the Action was filed, made or

25  taken in bad faith or without a reasonable basis.  The Parties reserve their right to rebut in any

26  manner that which such party determines to be any contention made in any public forum that the

27  Action was brought or defended in bad faith or without a reasonable basis.  The Parties agree that the

28  amount paid and the other terms of the Settlement were negotiated at arms' length and in good faith

by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel, with the assistance of court-supervised mediation.

9.5     To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

9.6     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

9.7     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.8     Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney/client privilege, joint defense privilege or work product immunity.

9.9     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

9.10     The Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Parties hereto and no representations, warranties or inducements have been made to any Party concerning the Stipulation, its Exhibits or the Supplemental Agreement other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

9.11     Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate actions required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

9.12     Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

9.13     The Stipulation may be executed by facsimile and in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same

instrument.  Counsel for the Parties to the Stipulation shall exchange among themselves original signed counterparts, and a complete set of executed counterparts shall be filed with the Court.

9.14    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

9.15    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.16    The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice-of-law principles.

9.17    No press announcement, press release, or other public statement, either directly or indirectly, concerning the Settlement or Stipulation may be made by any of the Parties without approval from the other Parties, except as required by law.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of September 19, 2006.

**SCHIFFRIN & BARROWAY, LLP**


_____/s/_____
**KATHARINE M. RYAN**

KAREN REILLY
KAY E. SICKLES
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:   (610) 667-7056

**Lead Counsel for Lead Plaintiff**

1

**COOLEY GODWARD LLP**

2

3                              _____
                                           /s/
                               **JOHN C. DWYER**

4

5          GRANT P. FONDO
           3000 El Camino Real
           Palo Alto, CA  94306-2155

6          Telephone:  (650) 843-5228
           Facsimile:   (650) 849-7400

7

8          **Counsel for Defendants Keith Baxter,
           Ronald J. Goedde, Charles J. Kittrell and
           William L. Woods**

9

10         Dated:   September 18, 2006

11

           **WINTHROP & WEINSTINE, P.A.**

12

13                            _____
                                         /s/
                              KARL E. ROBINSON

14

15         DAVID P. PEARSON
           225 South Sixth Street, Suite 3500
           Minneapolis, MN 55402

16         Telephone:  (612) 604-6400
           Facsimile:   (612) 604-6800

17

18         **Counsel for Defendant Richard R. Hylland**

           Dated:  September 18, 2006

19

20         **LEONARD STREET & DEINARD, P.A**

           _____
                         /s/
21                       DOUGLAS R. BOETTGE

22         MICHAEL G. TAYLOR
           150 South Fifth Street, Suite 2300

23         Minneapolis, MN 55401
           Telephone:  (612) 335-1500

24         Facsimile:   (612) 335-1657

25         **Counsel for Defendants Merle D. Lewis
           and Daniel K. Newell**

26

27         Dated:   September 15, 2006

28

STIPULATION OF SETTLEMENT            - 27 -

1

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

2

_____/s/_____
                                        SUSAN D. RESLEY

3

4

WALTER F. BROWN
505 Howard Street
San Francisco, CA  94105-2669
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759

5

6

7

**Counsel for Defendant Richard D. Nye**

8

9

10

<u>**GENERAL ORDER 45(X)**</u>

11

       I, Robert S. Green, am the ECF User whose identification and password are being used to

12

file this STIPULATION AND AGREEMENT OF SETTLEMENT.  In compliance with General

13

Order 45(X), I hereby attest that I have on file all holograph signatures for any signatures

14

indicated by a "conformed" signature (/s/) within this e-filed document.

15

Dated: September 19, 2006                                    GREEN WELLING LLP

16

17

18

_____/s/_____
                            Robert S. Green

19

20

21

22

23

24

25

26

27

28